IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| ARTHUR CARSON | § | |
| v. | § | CIVIL ACTION NO. 6:08cv512 |
| NATHANIEL QUARTERMAN, ET AL. | § | |

MEMORANDUM ADOPTING REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND ENTERING FINAL JUDGMENT

The Plaintiff Arthur Carson, proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged denials of his constitutional rights during his confinement in the Texas Department of Criminal Justice, Correctional Institutions Division. This Court ordered that the case be referred to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

Carson listed five general issues in his complaint and testimony, relating to his confinement in TDCJ-CID. These issues are: (1) breach of contract; (2) racketeering; (3) retaliation; (4) parole and violations of the Americans with Disabilities Act; and (5) medical indifference. The Magistrate Judge scheduled an evidentiary hearing, which was conducted on February 19, 2009.

Following this hearing, the Magistrate Judge issued a Report recommending that Carson's lawsuit be dismissed. Carson filed objections to this Report on May 20, 2009.

In his objections, Carson first complains that the Magistrate Judge was "biased" against him. He says that it was only after he, Carson, filed a complaint with the Fifth Circuit that the Magistrate Judge issued her Report. The Court has a large number of civil and criminal cases of which Carson's is one. His case is equally important as any of the others, and the Court handles cases as judicial business permits; the timing of Carson's complaint to the Fifth Circuit was wholly irrelevant to when

1

the Report was issued. None of Carson's assertions of bias contain any merit. His objection on this ground is without merit.

Second, Carson complains that the Magistrate Judge accepted evidence from the prison officials without allowing him to review it. This evidence consisted of certified, authenticated records from prison officials. As the Magistrate Judge made clear in the Report, Carson's testimony was taken as true and anything in the records which factually contradicted Carson's pleadings and testimony was disregarded. The Magistrate Judge did not use the records to make credibility determinations regarding Carson's testimony. His objection on this point is without merit.

Third, Carson complained that the Magistrate Judge "ignored pre-trial motions," specifically pointing to his motion to transfer venue. In this motion, Carson asked that venue be transferred to the U.S. District Court for the Northern District of Texas because he lives in the Northern District and it would be more convenient for him. Aside from the fact that Carson chose the venue for this lawsuit in the Eastern District of Texas himself, venue is proper in the judicial district where the defendants reside or the cause of action arose. The plaintiff's residency is not a factor. In this case, none of the defendants reside in the Northern District of Texas, and Carson points to no claims in his lawsuit which occurred in the Northern District. His motion to transfer venue lacked merit, and so the fact that it was not addressed prior to the issuance of the Report did not prejudice Carson. His objection on this ground is without merit.

Carson next turns to the specific bases of the Report. He says first that the Magistrate Judge "ignored the ex post factor issue of Plaintiff's work time credit claim, where the law changed from allowing certain offenders such as Plaintiff from receiving said credits to prohibiting 3(g) offenders." He says that the intent of the Legislature was for all prisoners to earn work time credits when the law was enacted, and that only in 1994 was the law changed. However, as the Magistrate Judge said, this is incorrect; work time credits are simply good time credits which are given for working, and Carson fails to offer anything to substantiate his claim that prior to 1994, all inmates were allowed to count work time credits. The Magistrate Judge cited the law in effect in 1988, when Carson was convicted,

which law said that inmates accrue good conduct time for "diligent participation in an industrial program or other work program." Tex Code Crim. Pro. Art. 42.18, sec. 8(b) (Vernon 1988). Thus, in 1988, work time credits were simply good time credits that were given for working, and were subject to all of the rules and regulations governing good time credits.

Because Carson was serving a sentence for attempted murder, with a deadly weapon finding, he was ineligible for release on mandatory supervision. Under Texas law, the Magistrate Judge said, any good time or work time credits which Carson received cannot apply to mandatory supervision, and his parole eligibility is calculated without regard to good time.

A search of case law and Texas statutory law fails to show any change in Texas law corresponding to Carson's claim. Rather, the Texas legislature has consistently defined work time as a subset of good time, and as such, these time credits were unavailable to Carson to reduce his sentence, his time for eligibility for parole, or his time for eligibility for mandatory supervision even had he been eligible for mandatory supervision, which he was not. As the Magistrate Judge said, the Texas Legislature determined that persons convicted of certain violent offenses, including attempted murder, in which a deadly weapon was affirmatively found to have been used, would not be eligible for mandatory supervision and would have parole eligibility computed without regard to good time, which included good time given for diligent participation in a work program. There is no *ex post facto* issue because Carson has failed to show a change of law which adversely affected him. His claim on this point is without merit.

Next, Carson complains that the Magistrate Judge "ignored" 18 U.S.C. §1761, prohibiting displacement of free-world labor by prison industries. He says that the defendants' conduct somehow "affected the atmosphere of prison life, or formed the genesis for other unsafe conditions in the Texas prison." Carson also says that he has set forth a claim under the Racketeer Influenced and Corrupt Organizations Act.

Contrary to Carson's assertion, the Magistrate Judge did discuss his claim under 18 U.S.C. §1761, concluding that Carson failed to show that he had standing to raise such a claim and that the

3

statute did not give rise to a private cause of action which Carson could vindicate in a lawsuit under 42 U.S.C. §1983. Carson's vague and general assertion that the defendants' conduct "affected the atmosphere of prison life" does not grant him standing, nor does it create a private right of action in Section 1761. Carson's claim on this point is without merit.

Carson also says that he "states a RICO claim." He says that at the evidentiary hearing, he should not have had the burden to prove his case. However, as the Magistrate Judge said, Carson wholly failed to allege any facts setting out a RICO claim; his vague and conclusory allegations were entirely insufficient to do so. *See* Bell Atlantic Corp. v. Twombley, 127 S.Ct. 1955, 1964-65 (2007) (noting that plaintiff must supply more than "labels and conclusions," and that Rule 8, Fed. R. Civ, P., requires a "showing," rather than a mere blanket assertion, of some entitlement to relief). Carson's objection on this point is without merit.

Carson next repeats his complaint about the evidentiary hearing, insisting that the Magistrate Judge relied on ex parte documents submitted by prison officials. As the Magistrate Judge made clear, Carson's testimony was taken as true, and the documents received into evidence were disregarded to the extent that they contradicted his testimony. *See* Wilson v. Barrientos, 926 F.3d 480, 483 (5th Cir. 1991). This objection is without merit.

Carson complains that he was not allowed additional time to submit exhibits, but in the two and a half months between the evidentiary hearing and the issuance of the Magistrate Judge's Report, Carson submitted no exhibits. He refers in his objections to affidavits supporting his claim concerning the confiscation of his typewriter, but the affidavit attached to the original complaint (docket no. 1-2) made no mention of his typewriter and made only conclusory allegations of retaliation. Furthermore, the Magistrate Judge set out Carson's factual allegations concerning the confiscation of his typewriter and accepted these factual allegations as true. Carson simply offered nothing beyond bare legal conclusions to show that this act was retaliatory in nature, which legal conclusions will not support a Section 1983 claim. Bell v. Twombly, 127 S.Ct. at 1965; *accord*, Moody v. Baker, 857 F.2d 256, 258 (5th Cir. 1988) (conclusory allegations of retaliation are

4

insufficient); Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995) (same). His objection on this basis is without merit.

Carson complains that the Magistrate Judge "ignored" his allegation that Texas only permits attorneys to appear before the Parole Board, and will not appoint attorneys to represent indigent inmates, which he says is a violation of the Equal Protection Clause; in addition, he says, the Report failed to address the Board's refusal to allow his family members to appear before the Board to present his case. In fact, the Magistrate Judge did discuss both of these issues, noting that the Fifth Circuit has held that there is no right to have appointed counsel at parole hearings and that the failure to appoint counsel does not violate the Equal Protection Clause. Cruz v. Skelton, 543 F.2d 86, 95 (5th Cir. 1976).

The Texas Administrative Code does not say that only attorneys can represent inmates at parole hearings, but that "persons representing an offender" may appear before a member of the board panel designated to consider the offender's case. Tex.Admin.Code art. 141.61. That section provides that "requests for appearances by persons representing offenders shall be only when the offender's case is under review, during the review period, and at the discretion of the members of the parole panel designated to review the case."

As the Magistrate Judge stated, even if the rules and regulations of the Texas Board of Pardons and Paroles were violated through the refusal to allow Carson's family members to represent him, Carson has not shown that the violation of the rules and regulations of this state agency amounted to a violation of the Constitution or laws of the United States. *See* Giovanni v. Lynn, 48 F.3d 908, 912-13 (5th Cir. 1995).

The Magistrate Judge also correctly concluded that because Carson has no liberty interest in release on parole, he cannot mount a challenge against any state parole review procedure on procedural or substantive due process grounds. Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997). These state parole procedures include the means by which the parole review hearings were conducted. Carson 's objection on this point is without merit.

Carson says that the Magistrate Judge "makes light" of the Parole Board's repeated use of unchanging factors to deny parole, and the repeated use of the same criteria, "prior crimes," to deny parole; he maintains that this "made the entire parole process a sham." Because Carson has no liberty interest in parole, he cannot challenge the state parole review procedure on procedural or substantive due process grounds. Johnson, 110 F.3d at 310. Furthermore, Carson has failed to show a constitutional violation in the fact that the Parole Board considered his prior criminal history in determining whether or not he was suitable for parole. This history included assaultive behavior, use of a deadly weapon in the commission of the present offense, multiple prior incarcerations, and previous revocations of parole or probation, and thus was plainly relevant for the Parole Board to review in considering whether to take the risk of releasing Carson to parole. Carson has failed to show that consideration of this undoubtedly relevant prior history made his parole review a "sham" or that his constitutional rights were violated through the fact of consideration of this history, even if he had a liberty interest in the procedures attendant to parole decisions, which he does not. *See*, White v. Cockrell, — F.Supp.2d —, civil action no. 3:00cv1951 (N.D.Tex., Jan. 31, 2002) (unpublished) (available on WESTLAW at 2002 WL 180885) (petitioner's claim that the Parole board improperly considered his criminal history, which "he cannot change," did not set out a violation of due process or equal protection). Carson's objection on this point is without merit.

Next, Carson says that the Magistrate Judge "ignored the defendants' ill will" and their "desire to injure plaintiff with a disciplinary offense" for refusing to get into a top bunk despite his health problems. As Carson concedes, this disciplinary case was overturned. The Magistrate Judge correctly concluded that the mere fact that Carson spent some time in solitary confinement prior to the case being overturned did not automatically entitle him to monetary compensation; the fact that Carson spent time in solitary confinement on a case which was later overturned did not exceed Carson's sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nor did it impose an atypical and significant hardship upon Carson in relation to the ordinary incidents of prison life. Hence, Carson did not show that this time spent in

6

solitary resulted in the violation of a constitutionally protected liberty interest, and his claim for compensation is without merit. Sandin v. Conner, 115 S.Ct. 2293, 2301 (1995). As the Magistrate Judge said, the Constitution does not provide a cause of action for every inmate whose disciplinary case is overturned on appeal. Carson's citation to Smith v. Wade, 461 U.S. 30 (1983) is inapposite; that case holds that punitive damages may be assessed in a Section 1983 lawsuit upon a finding that the defendant's conduct was motivated by evil motive or intent, and says nothing about the awarding of damages for overturned disciplinary cases. His claim on this point is without merit.

In a similar vein, Carson asserts that he is entitled to damages because he was not allowed any witnesses at the disciplinary hearing. However, he has not shown that the punishment imposed at this hearing deprived him of any constitutionally protected liberty interests. In Sandin, the plaintiff was denied witnesses at his disciplinary hearing and brought suit under Section 1983, but because no liberty interests were implicated, the Supreme Court determined that the claim lacked merit. Carson's claim fails for the same reason.

Carson says that the Magistrate Judge did not address his claim under the Americans with Disabilities Act with regard to his hearing loss or job assignment to the packing plant, which assignment he says "exposed him to an unreasonable risk of danger." The Magistrate Judge did address this claim, concluding that Carson had failed to show that he suffered from discrimination *by reason of* his disability, instead offering only conclusory allegations that the defendants had violated the ADA in various ways. In addition, the Fifth Circuit has held that in order to successfully plead a cause of action in civil rights cases, a plaintiff must enunciate a set of facts that illustrate the defendants' participation in the alleged wrong. Jacquez v. Procunier, 801 F.2d 789, 793 (5th Cir. 1986). Carson's vague and conclusory claims concerning the ADA wholly failed to enunciate a set of facts showing how any of the named defendants participated in the alleged wrongs. His objection on this point is without merit.

Carson next says that the Magistrate Judge "abused her discretion" in determining that his rights were not violated by the alleged denial of hepatitis treatment. He cites Trigo v. TDCJ, 225

Fed.Appx. 211 (5th Cir. 2007). In Trigo, the plaintiff, who suffered from hepatitis C marked by "extremely high" levels of liver enzymes, was denied treatment in August of 2003 because of a policy that inmates had to be incarcerated for 12 months before they received treatment, and then denied treatment again in May of 2004 based on a policy that treatment would be provided only if the inmate was not due to be discharged within 12 months. As a result, he developed cirrhosis of the liver. The Fifth Circuit concluded that the assertions of denial of treatment for policy rather than medical reasons, and the harm suffered through the development of cirrhosis of the liver, were not frivolous.

In this case, as the Magistrate Judge stated, Carson was routinely seen in the chronic care clinic and was found to be asymptomatic. In November of 2006, his liver enzyme level was read at 74, which is elevated above normal but less than 1.5 times the upper limit of the normal range; consequently, the medical personnel determined that he should continue to be monitored. Carson was seen in the hepatitis clinic in Galveston in July of 2008, at which time the doctor noted that he was being evaluated for treatment of hepatitis C but that he was presently asymptomatic, and that he would be discharging in December of 2008; the doctor further noted that treatment in the free world was discussed and a followup appointment was set for January of 2009 in case Carson did not get released as scheduled.

As the Magistrate Judge's Report and the above discussion make clear, a critical difference exists between Carson's case and Trigo's. In Trigo, the plaintiff was denied treatment for *non-medical* reasons, which reasons included policies regarding the length of time that a prisoner had to be incarcerated and the length of time that he had before release. Carson, by contrast, was not treated for *medical* reasons - he was asymptomatic and his liver enzymes were not elevated to the level of 1.5 times the upper limit of the normal range, which is the initial trigger for the start of treatment.[1]

---

[1] As the Magistrate Judge explained, under TDCJ policies, if the liver enzymes remain more than 1.5 to 2 times the normal limit on 4/5 of the determinations done at three-month intervals, or laboratory evidence of more advanced disease is obtained, the inmate is referred to the GI Clinic for evaluation of anti-viral therapy.

The evidence shows and Carson does not deny that he was monitored on a regular basis, and in fact was seen at a hepatitis clinic in Galveston just six months before his release. The possibility of deliberate indifference existed in Trigo because the denial of treatment was done for non-medical reasons, and so the plaintiff was effectively denied treatment regardless of his actual condition. By contrast, Carson was evaluated for treatment, but the medical personnel determined that his condition did not warrant commencement of anti-viral therapy. The fact that Carson disagrees with this medical determination does not mean that the medical personnel were thereby deliberately indifferent to his medical needs. *See* Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997). His objection on this point is without merit.

Carson complains that "a reasonable person would assume bias" on the part of the Magistrate Judge and that it was an abuse of discretion for her to move forward on his case. Carson has sought recusal of the Magistrate Judge, which was denied by this Court on May 8, 2009. Carson has offered nothing to show that the Magistrate Judge was biased or that it was improper for the Magistrate Judge to conduct the hearing on his case and issue a Report and Recommendation. His objection on this ground is without merit.

Finally, Carson has filed a motion seeking a transcript of the evidentiary hearing in the case at Government expense. The official transcript of the testimony of the Spears hearing is the electronic recording (videotape or DVD) itself; no printed transcript is normally prepared. *See* Shabazz v. Lynaugh, 974 F.2d 597, 597 n.2 (5th Cir. 1992).

In addition, 28 U.S.C. §753(f) reads, in pertinent part, as follows:

> Fees for transcripts furnished in criminal proceedings to persons proceeding under the Criminal Justice Act (18 U.S.C. 3006A) or in habeas corpus proceedings to persons allowed to sue, defend, or appeal in forma pauperis shall be paid by the United States out of moneys appropriated for those purposes. Fees for transcripts furnished in proceedings brought under Section 2255 of this title to persons permitted to sue or appeal in forma pauperis shall be paid by the United States out of money appropriated for that purpose if the trial judge or a circuit judge certifies that the suit or appeal is not frivolous and that the transcript is needed to decide the issue presented by the suit or appeal. Fees for transcripts furnished in other proceedings to persons permitted to appeal in forma pauperis shall also be paid by the United States if the trial judge or a circuit judge certifies that the appeal is not frivolous (but presents a substantial question).

Carson is not proceeding in habeas corpus or under Section 2255, nor is this a criminal proceeding under 18 U.S.C. §3006A. He has made no showing whatsoever that his lawsuit or any grounds which he may wish to present in the event he wishes to appeal are not frivolous but present a substantial question. For this reason, his request for a transcript of the evidentiary hearing, at Government expense, is without merit.

The Court has conducted a careful *de novo* review of the Plaintiff's pleadings and testimony, the Report of the Magistrate Judge, and the Plaintiff's objections thereto. Upon such *de novo* review, the Court has concluded that the Report of the Magistrate Judge is correct and that the Plaintiff's objections are without merit. It is accordingly

ORDERED that the Plaintiff's objections are overruled and that the Report of the Magistrate Judge is ADOPTED as the opinion of the District Court. It is further

ORDERED that the above-styled civil rights lawsuit be and hereby is DISMISSED with prejudice as frivolous and for failure to state a claim upon which relief may be granted. Such dismissal is without prejudice to Carson's right to pursue his claims regarding the confiscation of his property in the courts of the State of Texas. It is further

ORDERED that any and all motions which may be pending in this action, including but not limited to the Plaintiff's motion for a transcript of the evidentiary hearing at Government expense, are hereby DENIED.

**SIGNED this 27th day of May, 2009.**

_____
MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE